GAERTNER *v.* STATE OF MICHIGAN

1. PHYSICIANS AND SURGEONS—PHYSICIAN-PATIENT PRIVILEGE— WAIVER—STATUTES.

The purpose of the statute, which provides that no person authorized to practice medicine or surgery shall be allowed to disclose any information which he may have acquired in attending any patient in his professional character, which information was necessary to enable him to prescribe for such patient as a physician or to do any act for him as a surgeon, is to protect the confidential nature of the physician-patient relationship; the privilege of confidentiality belongs to the patient and it can be waived only by the patient (MCLA § 600.2157).

2. HOSPITALS—PATIENT'S RECORDS—GUARDIAN AND WARD—PHYSICIANS AND SURGEONS—STATUTES.

A state hospital may not lawfully deny the guardian of an incompetent minor access to the records of his ward on the basis of a statute, which provides that no person authorized to practice medicine or surgery shall be allowed to disclose any information which he may have acquired in attending any patient in his professional character, which information was necessary to enable him to prescribe for such patient as a physician or to do any act for him as a surgeon, as the physician-patient privilege is the privilege of the patient and the guardian can legally act for his mentally incompetent ward who cannot act for himself and the law will not leave him helpless (MCLA § 600.2157).

REFERENCES FOR POINTS IN HEADNOTES

[1] 41 Am Jur, Physicians and Surgeons § 75.
[2, 3] 58 Am Jur, Witnesses § 439.
[4] 42 Am Jur 2d, Injunctions § 261.
  39 Am Jur, Parties §§ 27, 36, 116.
[5] 42 Am Jur, Process § 105.
  49 Am Jur, States, Territories, and Dependencies § 103.

3. HOSPITALS—PATIENT'S RECORDS—MENTAL HEALTH—MENTAL PATIENT'S RECORDS.

A patient or his lawful representative shall have access to all of the patient's hospital records but, upon a proper showing, courts may take appropriate action to suppress such portions of mental patient's records as necessary to adequately protect those patients.

4. INJUNCTION—PARTIES—STATES—OFFICERS—MEDICAL RECORDS.

It is not necessary in order to effect complete relief for state officials in addition to the state itself to be made parties to an action where the relief requested against the state did not require an affirmative action on the part of any state official but rather an injunction against the state's interference with a guardian's right of access to his ward's medical records which would, of course, be binding upon all agents and employees of the state (GCR 1963, 201.3[5], 205.1).

5. STATES—SERVICE OF PROCESS—ATTORNEY GENERAL—INJUNCTION.

Service of process upon the Attorney General gave the state proper notice of suit and was sufficient to bring the state within the trial court's jurisdiction where plaintiff sought an injunction prohibiting the State of Michigan, its officers, agents and employees and those acting in concert therewith from interfering with or denying plaintiff the right to examine, inspect and copy the hospital records of her mentally incompetent ward.

Appeal from Court of Appeals, Division 1, J. H. Gillis, P. J., and V. J. Brennan and Weipert, JJ., affirming Wayne, Thomas J. Foley, J. Submitted March 3, 1971. (No. 39 January Term 1971, Docket No. 52,928.) Decided June 1, 1971.

24 Mich App 503 affirmed.

Complaint by Vera Gaertner as guardian of Sharon Gaertner, a mentally incompetent minor, against the State of Michigan for an injunction to enjoin defendant, its officers, agents and employees and those acting in concert therewith from interfering with or denying plaintiff the right to examine

and copy state hospitals' medical records of her
ward. Injunction granted. Defendant appealed to
the Court of Appeals. Affirmed. Defendant ap-
peals. Affirmed.

*Goodman, Eden, Robb, Millender, Goodman &
Bedrosian* (by *Charles J. Barr*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Maxine Boord
Virtue* and *Arthur E. D'Hondt,* Assistant Attorneys
General, for defendant.

WILLIAMS, J.    This case involves the question
whether a state hospital may lawfully bar the legal
representative of a patient from access to that pa-
tient's hospital records on the basis of MCLA § 600-
.2157 (Stat Ann 1962 Rev § 27A.2157) making those
records confidential. The Attorney General con-
tends for non-access to such records as a protec-
tion to hospital physicians against loss of licensure,
suit or prosecution for violation of the aforesaid
statutory provisions.

Plaintiff, a guardian of a mentally incompetent
minor, successfully sought to enjoin the State of
Michigan and its agents from interfering with her
general access to medical records reflecting treat-
ment of her ward as an in-patient at the Lapeer
State Home and Training School and the Fort
Custer State Home and Training School for the
period from 1959 to 1968. The plaintiff's attorney
first requested access to the records in April, 1968,
from the Fort Custer State Home and Training
School in whose possession the records now are. He
submitted with the request a waiver of the physi-
cian-patient privilege signed by the plaintiff. The
request was referred to the Department of Mental

Health which in turn referred it to the office of the Attorney General. Upon the advice of the Attorney General, the request was denied.

The trial court granted an injunction prohibiting the "State of Michigan, its officers, agents and employees and those acting in concert therewith * * * from interfering with or denying plaintiff the right to examine, inspect and copy the hospital records of Sharon Gaertner" (the plaintiff's mentally incompetent ward). The Court of Appeals affirmed. From the decision of the Court of Appeals, the State of Michigan, represented by the Attorney General, appeals to this Court.

MCLA § 600.2157 (Stat Ann 1962 Rev § 27A.2157) reads as follows:

"No person duly authorized to practice medicine or surgery shall be allowed to disclose any information which he may have acquired in attending any patient in his professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon: Provided, however, That in case such patient shall bring an action against any defendant to recover for any personal injuries, or for any malpractice, if such plaintiff shall produce any physician as a witness in his own behalf, who has treated him for such injury, or for any disease or condition, with reference to which such malpractice is alleged, he shall be deemed to have waived the privilege hereinbefore provided for, as to any or all other physicians, who may have treated him for such injuries, disease or condition: Provided further, That after the decease of such patient, in a contest upon the question of admitting the will of such patient to probate, the heirs at law of such patient, whether proponents or contestants of his will, shall be deemed to be personal representatives of such

deceased patient for the purpose of waiving the privilege hereinbefore created."[1]

The purpose of this statute is to protect the confidential nature of the physician-patient relationship. In *Schechet* v. *Kesten* (1964), 372 Mich 346, 351, this Court said of the statute:

"It prohibits the physician from disclosing, in the course of any action wherein his patient or patients are not involved and do not consent, even the names of such noninvolved patients."

The privilege of confidentiality belongs to the patient; it can be waived only by the patient. *Schechet* v. *Kesten, supra.* In *Storrs* v. *Scougale* (1882), 48 Mich 387, 395, this Court by Justice COOLEY said of this privilege of confidentiality:

" * * * a privilege is guarded which does not belong to him [the physician] but to his patient, and which continues indefinitely, and can be waived by no one but the patient himself."

The remaining question is whether the guardian for the mental incompetent in this case can act for his ward. The mentally incompetent ward cannot act for himself, and the law will not leave him helpless. For example, MCLA § 704.2 (Stat Ann 1962 Rev § 27.3178[252]) which governs the relationship of a fiduciary to those persons for whom he is empowered to act provides in pertinent part as follows:

" * * * no facts or knowledge pertaining to their property in his hands or to their affairs shall be disclosed by the fiduciary in any manner except with

---

[1] The two provisos in the above cited statute cannot be regarded as the exclusive methods of waiver. The legislative history of the statutorily created privilege indicates that the two provisos were absent when the privilege was originally created in 1846. Long before the enactment of these provisos this Court intimated that the privilege could be waived by the patient. *Storrs* v. *Scougale* (1882), 48 Mich 387, 395.

the consent of the cestui, heir, devisee, legatee, beneficiary or ward: Provided, however, That such consent may be given by the fiduciary of a minor or incompetent, in behalf of such minor or incompetent * * * ."

This Court therefore holds that a state hospital may not lawfully deny the guardian of an incompetent minor access to the records of his ward on the basis of MCLA § 600.2157 (Stat Ann 1962 Rev § 27A.2157). The physician-patient privilege is the privilege of the patient. The guardian can legally act for his mentally incompetent ward who cannot act for himself.

In his brief (pp 13, 14), the Attorney General has made a valid point that in the case of the mentally ill:

" * * * it is often the medical duty of a psychiatrist to withhold from patients the contents of medical records to the extent that such records contain family confidences, disclosures of past behavior or medical predictions of possible future recurrences of bizarre or disturbed behavior or other disclosures certain to upset the patient severely."

There is nothing in this case to indicate that the records of the plaintiff's ward are of that character. Suffice it to say that upon a proper showing courts may take appropriate action in the future to suppress such portions of mental patients' records as necessary to adequately protect those patients, otherwise the patient or his lawful representative shall have access to all of the patient's hospital records.

Furthermore physicians and hospitals may protect patients and themselves by requiring, as the Court of Appeals allowed, the execution of "a valid consent and waiver of the privilege" before exposing a patient's record.

The Attorney General raised secondary procedural issues.  First, the Attorney General contended that the superintendent of the Fort Custer State Home and Training School and the director of the Department of Mental Health are necessary parties because of GCR 1963, 205.1.  This rule requires that "persons having such interest in the subject matter that their presence in the action is essential to permit the court to render complete relief shall be made parties."  Second, the Attorney General claimed that the aforesaid officials should be named parties defendant under GCR 1963, 201.3(5), which states that suits may be brought against the state in its own name "except that an officer of the state  *  *  * shall be sued in his official capacity for the purpose of enforcing the performance by him of an official duty."

The relief requested in this case is not the performance of an official duty but the cessation from interference with the rightful access of the guardian to the records of his mentally incompetent ward.  Since this does not require an affirmative action on the part of any state official, and since an injunction against the state's interference with the guardian's right of access to his ward's records would, of course, be binding on all agents and employees of the state, it is not necessary in order to effect complete relief for state officials in addition to the state itself to be made parties to the action because of either rule.[2]

The Attorney General further contends that service of process upon him alone was insufficient.  The purpose of service of process was well stated in Justice Blair's opinion in *Chisholm* v. *Georgia* (1793), 2 US (2 Dall) 419, 452 (1 L Ed 440, 454) in

[2] This conclusion is further bolstered by the observation, apparent from the record, that the refusal of access was a direct result of the consistent and long-standing policy of the Attorney General's office to counsel refusal of such access.

which service of process was made upon the Governor and the Attorney General of Georgia:

"With respect to the service of the summons to appear, the manner in which it has been served seems to be as proper as any which could be devised for the purpose of giving notice of the suit, which is the end proposed by it, the Governor being the head of the Executive Department, and the Attorney General the law-officer who generally represents the State in legal proceedings;"

Service upon the Attorney General gave the state proper notice of suit. Such service was sufficient to bring the state within the trial court's jurisdiction.[3]
    Affirmed.

T. M. KAVANAGH, C. J., and BLACK, ADAMS, T. E. BRENNAN, T. G. KAVANAGH, and SWAINSON JJ., concurred with WILLIAMS, J.

---

[3] There appears to be no Michigan precedent directly in point. At common law it appears to have been assumed that service of process upon either the Governor or Attorney General was proper service upon the state. See the language of Justice NORTH repeating the trial judge's quotation of 59 Corpus Juris 327, 328 and his reference to it as the common-law rule concerning service of process in *Edward Thompson Co.* v. *Maynard* (1934), 269 Mich 97, 99:

" ' "Where proceedings are authorized against the State, but there is no express provision as to service of process, the State may properly be brought into court by service upon the governor and attorney general, or apparently, either of such officers." ' " Justice POTTER, speaking for one-half of an equally divided Court, denied that this was the common-law rule.