PEOPLE v LAWRENCE JOHNSON

Docket No. 54021. Submitted June 26, 1981, at Detroit.—Decided November 17, 1981. Leave to appeal applied for.

Lawrence P. Johnson was charged with knowingly and intentionally acquiring or obtaining possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge. It was alleged that defendant altered a prescription for 15 tablets of Talwin to read 45 tablets and thereby acquired 45 tablets of Talwin and that Talwin contained the controlled substance pentazocine. Defendant did not object at the preliminary examination to the testimony of his doctor who prescribed the Talwin. After the impanelment of the jury in Livingston Circuit Court, defendant moved to exclude the doctor's testimony on the basis of physician-patient privilege. Paul R. Mahinske, J., denied the motion to exclude testimony on the basis that defendant waived the privilege by failing to raise an objection to the doctor's testimony at the preliminary examination. The doctor thereafter testified as to the nature and amount of the prescription given to defendant. The trial judge instructed the jury, without objection, that "Talwin does contain pentazocine and is a controlled substance under the laws of the State of Michigan". Defendant was convicted of the charged crime. Defendant appeals. *Held:*

1. Defendant's objection to the use of the doctor's testimony, even though untimely, preserved for appeal the question of whether the physician-patient privilege is applicable under these circumstances. The physician-patient privilege does not preclude testimony by the physician relative to alterations of

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 425.
[2, 3] 5 Am Jur 2d, Appeal and Error §§ 562-565, 625-627.
  21 Am Jur 2d, Criminal Law § 427.
[3] 81 Am Jur 2d, Witnesses § 262.
[4] 81 Am Jur 2d, Witnesses § 264.
  Right of one against whom testimony is offered to invoke privilege of communication between others. 2 ALR2d 645.
[5] 81 Am Jur 2d, Witnesses § 249.
[6] 5 Am Jur 2d, Appeal and Error §§ 565, 623, 625-627.

the prescription issued by him where, as here, his patient is charged with a crime arising out of such alteration. The statutory purpose of the physician-patient privilege is to preserve legitimate confidential communications, and the privilege may not be used to suppress the truth concerning criminal acts. The privilege must yield where the evidence sought is demonstrably relevant to the establishment of the criminal act itself.

2. Reversal of a conviction on the basis of an instruction given to the jury will be granted only upon a showing of manifest injustice where the defendant failed to object before the trial court to the instruction given. Since there was evidence that Talwin contained pentazocine and pentazocine has been classified as a controlled substance, defendant has failed to establish manifest injustice.

Affirmed.

1. CRIMINAL LAW — PRELIMINARY EXAMINATIONS — EVIDENCE.

A preliminary examination, by its very nature, is inquisitional and requires that the examining magistrate have wide discretion as to the evidence submitted.

2. CRIMINAL LAW — PRELIMINARY EXAMINATIONS — PRESERVING QUESTION — TRIAL.

Objections based on errors or irregularities at a preliminary examination are waived unless raised before trial; a jury trial commences upon impanelment of the jury.

3. CRIMINAL LAW — PHYSICIAN-PATIENT PRIVILEGE — PRESERVING QUESTION — APPEAL.

An objection made after the impanelment of the jury by a defendant on the basis that the testimony of his doctor should be excluded at trial on the basis of physician-patient privilege preserves that question for appellate review even though the failure to object to the doctor's preliminary examination testimony coupled with the failure to bring a timely motion before the trial court justified the trial court's denial of the motion to exclude the testimony.

4. PHYSICIANS AND SURGEONS — PHYSICIAN-PATIENT PRIVILEGE — WAIVER.

The physician-patient privilege was not recognized at common law and, therefore, is controlled exclusively by the statute which creates the privilege; the privilege belongs to the patient and can only be waived by him (MCL 600.2157; MSA 27A.2157).

5. Criminal Law — Physician-Patient Privilege — Prescriptions
    — Controlled Substances.
    The physician-patient privilege does not preclude the testimony
    of a physician relative to alterations in a prescription issued by
    him in a trial of the doctor's patient on a charge of obtaining a
    controlled substance by misrepresentation, fraud, forgery, de-
    ception or subterfuge.

6. Criminal Law — Jury Instructions — Controlled Substances
    — Preserving Question.
    Review of a jury charge that "Talwin does contain pentazocine
    and is a controlled substance under the laws of the State of
    Michigan" will not be undertaken by the Court of Appeals
    where there was no objection in the trial court to the instruc-
    tion and manifest injustice is not shown.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Frank R. Del Vero,* Prosecuting Attorney, and *Thomas C. Nelson,* Assistant Attorney General, for the people.

*Richard R. Robinson,* for defendant.

Before: J. H. Gillis, P.J., and Bashara and K. N. Sanborn,* JJ.

K. N. Sanborn, J. On July 23, 1980, defendant was convicted of knowingly or intentionally acquiring or obtaining possession of a controlled substance (pentazocine) by misrepresentation, fraud, forgery, deception, or subterfuge, contrary to MCL 333.7407(1)(c); MSA 14.15(7407)(1)(c). Defendant was sentenced to one year in prison. He appeals as of right.

Defendant had gone to Dr. Run Y. Gu, a physician in Brighton, Michigan, seeking treatment for a cough and headaches. Dr. Gu diagnosed defendant's condition as acute bronchitis. Dr. Gu prescribed medication to treat the bronchitis and, at defendant's request, also prescribed fifteen 50 mg.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tablets of Talwin (pentazocine), and fifteen 10 mg. tablets of Valium. Defendant claimed he had taken Talwin, an analgesic, on previous occasions because it was the only medication that would relieve his headaches.

These prescriptions were presented to Edwin Dintsch, a registered pharmacist at the K-Mart store in Brighton. Mr. Dintsch testified that he filled the defendant's prescriptions, and that the Talwin prescription was for 45 tablets. Mr. Dintsch also stated that Talwin's generic name is pentazocine and that it is a controlled substance.

Defendant moved before the trial court to exclude the testimony of Dr. Run Y. Gu. This motion was based on the physician-patient privilege as provided in MCL 600.2157; MSA 27A.2157. Defendant contended that Dr. Gu was incompetent to testify about his conversations with the defendant at the time of treatment. It was also contended that Dr. Gu could not testify as to the alleged alteration of the prescription. The trial judge denied this motion on the ground that defendant had waived the privilege by failing to object to Dr. Gu's testimony at the preliminary examination.

The first issue raised on appeal is whether or not the defendant had waived the physician-patient privilege by failing to spcifically assert it at the preliminary examination. A motion *in limine* was made by defense counsel *after* impanelment of the jury, but prior to opening statements.

By its very nature, a preliminary examination is inquisitional and requires that the examining magistrate have wide discretion as to evidence submitted in order to satisfy his finding of probable cause. *People v Zaleski,* 375 Mich 71; 133 NW2d 175 (1965). Generally, any objection based on errors or irregularities at the examination

must be raised when the opportunity first arises. Michigan law requires that these objections be made before trial and that a failure to object in a timely manner constitutes a waiver of the claimed error. *People v Sutton,* 36 Mich App 604; 194 NW2d 3 (1971), *People v Childrey,* 65 Mich App 276; 237 NW2d 288 (1975). In a jury milieu, trial commences upon impanelment of the jury. *Sutton, supra.*[1]

Our rationale for denying untimely motions is to prevent their use as tactical devices. In *People v Brott,* 163 Mich 150, 159; 128 NW 236 (1910), the Court stated this proposition in its discussion of motions to quash:

"The motion to quash for want of testimony before the justice on the examination was properly overruled. Upon that question, also, the magistrate was permitted to act without his attention being called to this claim, which was first raised at circuit after the jury was sworn, and when a discharge on a technical point might be final, by reason of the defendants having been in jeopardy."

Likewise, had defense counsel objected to Dr. Gu's testimony at the preliminary examination, and had it been sustained, the defendant might well have been discharged for lack of probable cause. At such time no jeopardy would have attached and the prosecution would have been free to bring charges later if it chose to do so. However, since the objection was raised *after* jeopardy attached, the case may well have been lost if the doctor's testimony were suppressed and the defendant would have been immune from prosecution.

The above reasoning seems particularly perti-

[1] See also *Crist v Bretz,* 437 US 28; 98 S Ct 2156; 57 L Ed 2d 24 (1978).

nent when one considers the results of holding otherwise. To do so would require prosecutors to anticipate and raise defenses which were not raised at the preliminary examination to insure against just such a move as we see in the instant case. This would also allow use of the element of surprise, which is generally disfavored in our jurisprudence. The motion by defense counsel did preserve our consideration of the physician-patient privilege,[2] though the motion was properly denied for consideration in the trial court.

The second issue on appeal is whether the communications between Dr. Gu and the defendant regarding the Talwin prescription was privileged under MCL 600.2157; MSA 27A.2157. The statute reads, in pertinent part:

"No person duly authorized to practice medicine or surgery shall be allowed to disclose any information which he may have acquired in attending any patient in his professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon * * *."

The purpose of the statute is to protect the confidential nature of the physician-patient relationship. *Gaertner v Michigan,* 385 Mich 49; 187 NW2d 429 (1971). This privilege was not recognized at common law, and, therefore, this statute controls the scope of the privilege in Michigan. *Eberle v Savon Food Stores, Inc,* 30 Mich App 496; 186 NW2d 837 (1971). The privilege belongs to the patient and can only be waived by him. *Gaertner, supra.*

---

[2] *People v Carter,* 101 Mich App 529; 300 NW2d 624 (1980). The raising of an objection or motion at trial preserves the right to assert the issue on appeal.

Defendant argues on appeal that Dr. Gu's testimony regarding the Talwin prescription is privileged. Defendant claims that this privilege extends not only to conversations regarding his ailments but, in effect, to anything which transpired during the office visit. We believe that the defendant construes the privilege too broadly in this case and that admission of the doctor's testimony was proper.

The testimony presented by Dr. Gu went primarily to showing that the prescription was altered.[3] The prescription could only be verified by the physician who issued it. Without the doctor's testimony, convictions for forgeries of prescriptions would be well-nigh impossible. The privilege is to be used for preserving legitimate confidential communications, not for suppressing the truth. Further, where the evidence sought is "demonstrably relevant" to the case at issue, a generalized claim of privilege must yield to the specific need for evidence. *People v Emanuel,* 98 Mich App 163, 187; 295 NW2d 875 (1980).[4] As mentioned above, crimes of this nature are difficult to prove at best, and, in the case at bar, Dr. Gu's testimony regard-

---

[3] Part of the testimony of Dr. Gu regarding defendant's appearance and medical condition was erroneously admitted. This information did not constitute reversible error since the jury would have found defendant guilty beyond a reasonable doubt even without the erroneously admitted evidence. *People v Norwood,* 70 Mich App 53, 57-58; 245 NW2d 170 (1976), *lv den* 397 Mich 884 (1976).

This information may even have helped defendant since it reflected a genuine reason for seeking medical attention. We believe that the doctor's testimony should have been limited to (1) communications concerning defendant's request for Talwin, (2) issuance of the prescription for 15 tablets, and (3) the fact of alteration from 15 to 45 tablets.

[4] See also *United States v Nixon,* 418 US 683; 94 S Ct 3090; 41 L Ed 2d 1039 (1974), where the Supreme Court, in a discussion of executive privilege, balanced the competing interests of the parties and held that a generalized assertion of privilege must yield to the demonstrated specific need for evidence in a pending criminal trial.

ing the Talwin prescription is "demonstrably relevant" to the case at issue.

Support for the above view can be found in Dean Wigmore's treatise on evidence. Dean Wigmore speaks of several ways that one might impliedly waive the physican-patient privilege. 8 Wigmore, Evidence (McNaughton Rev), § 2388 *et seq.,* p 853. A portion of that analysis is pertinent here:

"A waiver is to be predicated not only when the conduct indicates a plain intention to abandon the privilege, but also when the conduct (though not evincing that intention) places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit retention of the privilege. It is not to be both a sword and a shield (in Lord Mansfield's phrase concerning an infant's exemption from liability)." *Id.,* 855.

Defendant seeks to use the privilege herein as both a sword and a shield. On the one hand, defendant sought out the benefits of the relationship and, in doing so, obtained the prescription now in dispute. Defendant then breached the spirit of this relationship by taking it upon himself to "prescribe his own treatment". Now he seeks protection of the privilege to insulate himself from criminal prosecution, knowing full well that only he and Dr. Gu know the original contents of the prescription. To prevent Dr. Gu from testifying even as to the rudimentary question of the number of tablets prescribed is inherently unfair, and we see no reason to allow the use of this privilege under such conditions.

Although Michigan has not spoken to the issue here presented, it is generally held that "[c]ommunications between physician and patient, however confidential they may be, are held not to be privi-

leged if they have been made in the furtherance of an unlawful or criminal purpose". 3 Jones, Evidence (6th ed), § 21.29, p 823. Though the defendant was obviously in need of treatment for bronchitis when he visited Dr. Gu, there is no evidence, other than defendant's assertions, that he needed the Talwin or the Valium. It seems reasonable to conclude that defendant's request for these drugs was made in furtherance of a criminal purpose.

In *State v Treadway,* 69 Ohio Op 2d 507; 328 NE2d 825 (1974), that court was faced with circumstances similar to those in the case at bar. In *Treadway,* the defendant was convicted of altering a prescription for 30 tablets of biphetamine 20 to 90 tablets. The court held that the history and contents of the prescription were not privileged by the physician-patient relationship. The court apparently believed that the communications involved had never reached the status of confidentiality adhering to communications truly needed for treatment.

Defendant's final argument on appeal is that the trial judge erred in charging the jury that Talwin was a controlled substance. Defendant contends that this should have been a factual question because there was allegedly no evidence adduced at trial to prove it.

During the trial, Mr. Dintsch, the pharmacist, testified that pentazocine was the generic name for Talwin and that it was a controlled substance. Dintsch was unable to locate the drug on any of the schedules of controlled substances provided by defense counsel. Dintsch stated that he was relying on labeling and visual recognition of the drugs in making his determination.

At the close of the people's case, the trial judge stated, "Now, I further charge you that Talwin

does contain pentazocine and is a controlled substance under the laws of the State of Michigan". No objection was made to this instruction. The absence of a request or objection precludes appellate review unless there is manifest injustice. *People v Milton,* 81 Mich App 515; 265 NW2d 397 (1978), *modified* 403 Mich 821 (1978), *People v Peoples,* 75 Mich App 616; 255 NW2d 707 (1977), *lv den* 400 Mich 857 (1977). No manifest injustice occurred since pentazocine is in fact a controlled substance. 1979 AC R 338.3120(2)(a), effective April 25, 1979. The offense in the present case occurred on March 15, 1980. Therefore, in view of Dr. Dintsch's testimony and the foregoing argument, we find there was no manifest injustice and that the trial judge did in fact make an accurate statement of the law.

Defendant's conviction is affirmed.

BASHARA, J., concurs in the result only.