PEOPLE V TRAYLOR

Docket No. 76954. Submitted June 11, 1985, at Grand Rapids,—Decided August 20, 1985.

Roy L. Traylor was convicted of armed robbery following a jury trial in Calhoun Circuit Court, Stanley E. Everett, J. At trial, over a defense objection, evidence was admitted which showed that the blood type of the perpetrator of the crime who had shot himself during the course of his escape was the same as defendant's blood type and that the blood-type was shared by only .02 percent of the relevant population. The defense further objected to the testimony of a doctor relative to the fact that the doctor treated defendant for a gunshot wound to the hand on the day following the robbery on the basis that such testimony was in violation of the physician-patient privilege. Defendant appealed. *Held:*

1. The statute requiring that a physician report to local police authorities any wound inflicted by a dangerous weapon acts as a limited qualification to the statutory physician-patient privilege. The reporting statute, being the more specific, is to be considered as an exception to the more general physician-patient privilege statute. Accordingly, the doctor was properly permitted to testify as to those matters which were subject to the reporting statute.

2. The trial court did not abuse its discretion by admitting the blood-type evidence, since such evidence was relevant and was not unfairly prejudicial.

3. The jury was properly instructed as to the use of circumstantial evidence.

Affirmed.

---

References for Points in Headnotes

[1] Am Jur 2d, Physicians, Surgeons, and Other Healers § 136.
Civil liability of physician for failure to diagnose or report battered child syndrome. 97 ALR3d 338.
[2, 3] Am Jur 2d, Statutes §§ 142 *et seq.*
[4] Am Jur 2d, Evidence §§ 370, 1104.
Admissibility, weight, and sufficiency of blood-grouping tests in criminal cases. 2 ALR4th 500.

1. EVIDENCE — PHYSICIAN-PATIENT PRIVILEGE — DEADLY WEAPONS.

   The statutorily created physician-patient privilege is qualified by the statute requiring that any wound inflicted by a deadly weapon must be reported to local police authorities; accordingly, it is not a violation of the physician-patient privilege for a doctor to report and to testify to those matters which a doctor is required to report pursuant to the reporting statute (MCL 600.2157, 750.411; MSA 27A.2157, 28.643).

2. STATUTES — JUDICIAL CONSTRUCTION.

   The more specific of two statutes which appear to be in conflict will be considered to be an exception to the more general statute.

3. STATUTES — JUDICIAL CONSTRUCTION.

   Repeal by implication of a specific statute will not be presumed where the Legislature reenacted a more general statute which appears to be in conflict.

4. CRIMINAL LAW — EVIDENCE — BLOOD-TYPE EVIDENCE.

   It is not an abuse of discretion for a trial court in a criminal trial to admit evidence that the blood type of the defendant is identical to that of the perpetrator of the crime and that the blood type is shared by only .02 percent of the relevant population where there was other evidence linking the defendant to the crime and undue emphasis was not placed on the blood-type evidence, since under those circumstances the blood-type evidence was relevant because it tended to prove a connection between the defendant and the crime and yet the evidence cannot be said to be unfairly prejudicial (MRE 401).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Conrad J. Sindt,* Prosecuting Attorney, and *Richard M. C. Adams,* Assistant Prosecuting Attorney, for the people.

*Sam Friia,* for defendant on appeal.

Before: GRIBBS, P.J., and CYNAR and P. J. DUGGAN,* JJ.

PER CURIAM. Defendant was convicted of two counts of armed robbery, MCL 750.529; MSA

---

* Circuit judge, sitting on the Court of Appeals by assignment.

28.797, after a jury trial in Novembver, 1983. He was sentenced to two concurrent prison terms of from 20 to 40 years. Defendant appeals his convictions to this Court as of right.

A robbery was committed at the Orchard Park Food Market in Leroy Township in Calhoun County, Michigan, on December 12, 1982. At about 8:30 p.m., three or four masked persons entered the market. At least one person was armed, carrying a shotgun. One robber ordered the cashier to open the cash register. The cashier and several customers were then ordered to lie down on the floor.

The office manager, Marilyn Ylioff, testified that two of the robbers forced their way into the market's office. They took $15,000 from the safe, Ylioff's purse, and two rings she was wearing.

Ylioff and several other witnesses testified that one shot was fired, followed by an expletive uttered emphatically by one of the robbers. A great deal of blood was found near the front door. Harry Zimmerman, an evidence technician, took blood samples from the pool of blood for analysis. He also recovered Ylioff's purse from the scene.

A police report, admitted into evidence by stipulation, indicated that defendant sought treatment for a gunshot wound to the right hand on December 13, 1982, at 11:46 a.m. at Henry Ford Hospital in Detroit, Michigan. Defendant left the hospital, against medical advice, after being treated.

Timothy Lindquist, M.D., testified that he treated defendant at Leila Hospital in Battle Creek on December 14, 1982, for a gunshot wound to the right hand. He testified that the wound appeared to be two or three days old at that time. The wound showed signs of prior treatment.

Frank Schehr, a supervisor at the Michigan State Police crime laboratory, testified that he

compared blood samples found at the scene to blood samples taken from defendant under the authority of a court order. Schehr testified that defendant's blood type was shared by .02 percent of the black population in Michigan.

Defendant testified on his own behalf. He claimed that he was robbed and shot while visiting a nightclub in Detroit. His testimony was supported, without much detail, by Shannon Brown, defendant's purported date that evening.

The jury found defendant guilty as charged.

Defendant's first claim is that Dr. Lindquist's testimony was privileged and not admissible at trial. The issue was preserved by a specific timely objection.

The physician-patient privilege is created by statute. MCL 600.2157; MSA 27A.2157. Defendant claims that Dr. Lindquist's observations of defendant's gunshot wound during his treatment of defendant was information subject to the privilege. The issue presented is whether the privilege must give way to MCL 750.411; MSA 28.643, which requires that any wound inflicted by a deadly weapon must be reported to the local police authorities.

A reading of the two statutes indicates that the privilege in MCL 600.2157; MSA 27A.2157 is qualified by MCL 750.411; MSA 28.643. This qualification is limited to the matters which a physician is required to report under MCL 750.411; MSA 28.643. When a general statute, such as the one creating the privilege, conflicts with a specific statute, such as the reporting statute, the specific statute is considered to be an exception to the general statute. *First Bank of Cadillac v Miller,* 131 Mich App 764; 347 NW2d 715 (1984). Furthermore, it will not be presumed that the Legislature intended a conflict when it reenacted the privilege

statute as 1961 PA 236, § 2157, effective January 1, 1963, while the reporting statute was still in existence. *Reed v Secretary of State,* 327 Mich 108; 41 NW2d 491 (1950). We cannot presume the privilege statute repealed the reporting statute by implication; implied repeal is generally not presumed. *People v Waterman,* 137 Mich App 429; 358 NW2d 602 (1984). Our conclusion is that the privilege is qualified by the reporting statute. Dr. Lindquist could testify about the matters he was required to report by the reporting statute.

Defendant's next claim is that the blood-type evidence was inadmissible. We disagree. The blood-type evidence was relevant under MRE 401 because it tended to prove (or disprove) a connection between the defendant and the robbery. The question of whether the blood on the market floor was defendant's was a fact of consequence to the determination of the case. The evidence was not admitted in a void; there was other evidence linking defendant to the crime. The manager's general description matched that of the defendant in height, weight, race and age. Defendant was driving an automobile matching a description of an automobile which was observed by a witness at the scene. Furthermore, the report from Henry Ford Hospital showed that defendant was treated for a gunshot wound on the morning following the robbery which occurred near Battle Creek.

Finally, there was no unfair prejudice. There is no indication that the probative value was artificially inflated by the prestige of the witnesses. *People v Goree,* 132 Mich App 693, 703; 349 NW2d 220 (1983). The trial court did not abuse its discretion. The evidence was properly admitted. *Goree, supra; People v Thorin,* 126 Mich App 293; 336 NW2d 913 (1983).

Defendant's final claim is that the trial court erred by not giving CJI 4:2:01 on pure circumstantial evidence. The issue was preserved by a timely objection. There was no error. The trial court instructed the jury on direct and circumstantial evidence, including the cautionary instruction on the use of circumstantial evidence contained in CJI 4:2:02. When the instructions are read in their entirety, it is clear that the jury was properly instructed on the proper uses of the evidence produced at trial. *People v Fordham,* 132 Mich 70, 76; 346 NW2d 899 (1984), *rev'd on other grounds* 419 Mich 874 (1984).

Affirmed.