PEOPLE v CHILDS

Docket No. 224698. Submitted September 5, 2000, at Grand Rapids. Decided November 21, 2000, at 9:10 A.M.

The Berrien County Prosecutor charged Tonia Childs with three counts of involuntary manslaughter, alleging that three of her children died in a house fire because of her gross negligence in leaving unattended a stove she had lit while she was intoxicated. Before the commencement of a preliminary examination in the 5th District Court, the prosecutor moved for an evidentiary ruling on the admissibility of the result of a blood alcohol test performed on a blood sample drawn by hospital personnel from the defendant while she was unconscious and being treated for injuries sustained in the fire. The court, John T. Hammond, J., ruled that the physician-patient privilege, MCL 600.2157; MSA 27A.2157, barred the admission of the results of the blood test into evidence. The Berrien Circuit Court, Gary J. Bruce, J., denied the prosecutor's application for leave to appeal. The prosecutor appealed to the Court of Appeals by leave granted.

The Court of Appeals *held*:

1. The unambiguous language of the statute that provides for the physician-patient privilege makes it clear that the privilege applies to any information that is acquired by a physician in the course of treating a patient, as long as that information is necessary to enable the physician to treat the patient. The prosecutor's argument that the privilege should not apply to unconscious persons because such an application does not further the purpose behind the privilege of encouraging persons to seek medical treatment when necessary and truthfully discuss their conditions with physicians is without merit.

2. The claim of physician-patient privilege in this case need not yield to the prosecutor's need for specific evidence. The prosecutor can use other evidence to prove intoxication. The existence of two carefully tailored and narrowly drawn statutory exceptions to the physician-patient privilege, neither of which is germane to this case, demonstrates that the Legislature intended the privilege to apply generally in criminal cases, subject only to those two exceptions.

Affirmed.

EVIDENCE — PHYSICIAN-PATIENT PRIVILEGE.

The physician-patient privilege applies to any information that is acquired by a physician in the course of treating a patient, as long as that information is necessary to enable the physician to treat the patient (MCL 600.2157; MSA 27A.2157).

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, *James Cherry,* Prosecuting Attorney, and *Aaron J. Mead,* Assistant Prosecuting Attorney, for the people.

*Parish, Black & Wolfram, P.L.L.C.* (by *Hugh W. Black*), for the defendant.

*Brian L. Mackie, Gary L. Walker,* and *Terrence E. Dean,* for the Prosecuting Attorneys Association of Michigan.

Before: DOCTOROFF, P.J., and HOLBROOK, JR., and SMOLENSKI, JJ.

SMOLENSKI, J. This case arises from a tragic house fire that occurred on February 4, 1999, in which three of defendant's young children died. The prosecutor charged defendant with three counts of involuntary manslaughter, MCL 750.321; MSA 28.553, alleging that she caused the fire while intoxicated. Before the district court scheduled a preliminary examination, the prosecutor moved to admit evidence regarding the blood alcohol test administered to defendant on the morning of the fire, arguing that the evidence was not protected by the statutory physician-patient privilege, MCL 600.2157; MSA 27A.2157. The district court denied the prosecutor's motion, holding that the statutory privilege prevented admission of the test results into evidence. The circuit court denied the pros-

ecutor's application for leave to appeal from that decision. The prosecutor appeals to this Court by leave granted. We affirm.

I

Because the lower courts have not yet conducted a preliminary examination, and because no witnesses have yet testified in this matter, the facts of this case have not been fully developed.[1] However, for the limited purpose of deciding whether the statutory physician-patient privilege bars admission of defendant's blood test results into evidence, the parties stipulated the facts set forth in the briefs that they filed with the district court. For purposes of this appeal, we will consider only those stipulated facts.[2]

On February 3, 1999, defendant left her home at approximately 4:30 P.M. She returned at approximately 1:30 A.M. on February 4, 1999. Defendant spoke briefly with a neighbor, Glory Woodson, before entering the home. Defendant's three youngest children and her boyfriend, Carl Lockhart, were sleeping in the home when defendant returned. Defendant's fourteen-year-old son, Nathaniel, awoke and spoke briefly to defendant about food that she might prepare for herself in

---

[1] Defendant briefly argued before the circuit court and argues on appeal that the evidence in this case is insufficient to support a finding of probable cause that she committed a crime. The lower courts did not conduct a preliminary examination and did not review this issue. Therefore, the issue is not properly before us, and we express no opinion regarding the sufficiency of the evidence.

[2] On appeal, defendant attached several exhibits to her brief, including police and fire reports containing statements provided by various witnesses. Although defendant's appeal brief refers to additional facts set forth in those exhibits, we note that they were not considered by the lower courts. Because these documents are not part of the record before this Court, we do not consider them in deciding this appeal.

the kitchen. Half an hour later, at approximately 2:00 A.M., Woodson called emergency personnel to report a fire in defendant's home. When police and firefighters arrived, only moments later, the home was fully ablaze.

Before rescue personnel arrived on the scene, Nathaniel and Lockhart escaped from the home. All three of defendant's younger children died as a result of the fire, either at the scene or en route to the hospital. Firefighters rescued defendant and rushed her to the hospital for medical treatment. Hospital personnel drew a sample of defendant's blood and performed a blood alcohol test, which revealed a blood serum alcohol level of 0.26. The parties do not dispute that hospital personnel conducted the blood test for purposes of medical treatment. The parties also do not dispute that defendant was unconscious at the time and that she did not speak to medical personnel before the test was performed.

The prosecutor's theory of the case is that defendant caused the fatal fire by lighting the kitchen stove's gas burner under an empty pot and leaving the pot unattended. According to the prosecutor, the empty pot ignited and the flames spread, first to the kitchen cabinets and then to the rest of the home. The prosecutor charged defendant with involuntary manslaughter, alleging that she acted in a grossly negligent manner, causing the death of her three children while intoxicated. In order to prove gross negligence, the prosecutor sought the admission of evidence of defendant's blood alcohol level. Defendant asserted that the statutory physician-patient privilege barred admission of the blood test results.

II

The statutory physician-patient privilege, MCL 600.2157; MSA 27A.2157, provides, in pertinent part:

> Except as otherwise provided by law, a person duly authorized to practice medicine or surgery shall not disclose any information that the person has acquired in attending a patient in a professional character, if the information was necessary to enable the person to prescribe for the patient as a physician, or to do any act for the patient as a surgeon.

Because the physician-patient privilege was not recognized at common law, its scope is controlled by the statutory language. *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 33; 594 NW2d 455 (1999); *Herald Co, Inc v Ann Arbor Public Schools*, 224 Mich App 266, 276; 568 NW2d 411 (1997).

> We review questions of statutory construction de novo. In doing so, our purpose is to discern and give effect to the Legislature's intent. We begin by examining the plain language of the statute; where that language is unambiguous, we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written. We must give the words of a statute their plain and ordinary meaning, and only where the statutory language is ambiguous may we look outside the statute to ascertain the Legislature's intent. [*People v Morey*, 461 Mich 325, 329-330; 603 NW2d 250 (1999) (citations omitted).]

In addition to these general rules of statutory construction, we note that our Supreme Court recently reaffirmed the rule that statutory privileges are narrowly defined, while their exceptions are broadly construed. *People v Warren*, 462 Mich 415, 428; 615 NW2d

691 (2000); *In re Brock*, 442 Mich 101, 119; 499 NW2d 752 (1993).

III

The prosecutor first argues that the statutory physician-patient privilege should not bar the admission of defendant's blood test into evidence because the privilege should not apply to unconscious persons. Although the prosecutor submits that no reported decision in this state has squarely addressed the issue, he argues that public policy concerns support such a ruling. In contrast, defendant argues that our Supreme Court has already recognized the application of the physician-patient privilege to unconscious persons, citing *People v Keskimaki*, 446 Mich 240; 521 NW2d 241 (1994). In that case, a police officer encountered the defendant slumped over the steering wheel of his vehicle, apparently unconscious and breathing erratically. Unable to rouse the defendant, the officer arranged for his transportation to a local hospital. Hospital personnel drew a sample of the defendant's blood and tested the sample for its alcohol content, apparently while the defendant was still unconscious. The prosecutor attempted to introduce the results of that blood test at the defendant's trial on charges of operating a motor vehicle while under the influence of intoxicating liquor, MCL 257.625; MSA 9.2325.

Although the *Keskimaki* case certainly involved an unconscious defendant, our review of that decision reveals that the Court neither considered nor decided whether the physician-patient privilege validly applied to an unconscious patient. Rather, the "sole issue before [the] Court on appeal [was] whether [the]

defendant was involved in an 'accident' within the meaning of the accident exception to the physician-patient privilege." *Keskimaki, supra* at 245-246.[3] Therefore, we agree with the prosecutor that the appellate courts of this state have not directly addressed the application of the statutory privilege to an unconscious patient.

The prosecutor argues that this Court should find the statutory privilege inapplicable to unconscious persons because application of the privilege to such persons would not further the broad social purpose supporting the privilege. Because defendant was hospitalized and treated while unconscious, the prosecutor argues that defendant did not intentionally establish a physician-patient relationship, did not engage in verbal communication with the physician, and did not share confidences with the physician.[4] According to the prosecutor, the purpose of the statutory privilege is protection of confidential communications between physician and patient. Furthermore, the prosecutor argues that the Legislature enacted the statute in order to encourage persons to seek medical aid when necessary, and to encourage truthful discussion of a person's medical condition with the physician. The prosecutor urges this Court to accept the proposition that "[a]pplication [of the privilege] to

---

[3] The "accident exception" to which the *Keskimaki* Court referred was formerly contained in MCL 257.625a(9); MSA 9.2325(1)(9), and is currently contained in MCL 257.625a(6)(e); MSA 9.2325(1)(6)(e), discussed later in this opinion.

[4] The prosecutor argued before the lower courts that the statutory privilege applies only to the testimony of a physician or surgeon and does not extend to other medical personnel acting under the direction of a physician or surgeon. Because the prosecutor has not renewed this argument on appeal, we do not address it.

unconscious persons who have not initiated a relationship with medical personnel bears little relevance to [the statute's purpose of] encouraging conscious persons to seek medical treatment."

In *Swickard v Wayne Co Medical Examiner*, 438 Mich 536, 560; 475 NW2d 304 (1991), our Supreme Court summarized the various ways in which the appellate courts of this state have explained the purpose of the statutory physician-patient privilege:

> In *Schechet v Kesten*, 372 Mich 346, 351, n 3; 126 NW2d 718 (1964), the Court stated that " '[t]he statute is one passed for the sole purpose of enabling persons to secure medical aid without betrayal of confidence.' " In *Gaertner v Michigan*, 385 Mich 49, 53; 187 NW2d 429 (1971), this Court stated that the purpose of the act "is to protect the confidential nature of the physician-patient relationship." And in *Drouillard v Metropolitan Life Ins Co*, 107 Mich App 608, 617; 310 NW2d 15 (1981), the Court of Appeals wrote that the purpose of the privilege "is to encourage free discussion between doctors and their patients . . . ."

Nevertheless, we do not begin our statutory analysis by examining the general "purpose" of a statute and then determining whether public policy concerns support application of the statute in particular factual circumstances. We must begin by examining the actual language of the statute. If that language is unambiguous, we must apply the statute as written. *Morey, supra* at 330.

Considering the statute's plain language, it is clear that the physician-patient privilege applies to "any information that the person has acquired in attending a patient in a professional character, if the information was necessary to enable the person to prescribe for the patient as a physician, or to do any act for the

patient as a surgeon." MCL 600.2157; MSA 27A.2157. The prosecutor does not contest that the blood test constitutes information "acquired" in attending defendant's needs as a patient. Further, the prosecutor does not contest that the blood test was necessary to enable the physician to prescribe a treatment for defendant's injuries. Instead, the prosecutor argues that defendant should not be permitted to claim the privilege because she was unconscious when treated. The prosecutor's argument implies a belief that the statute protects only a patient's verbal communications of confidential information to a physician. We do not believe that the plain language of the statute permits such an interpretation. The statute protects "any information" that is "acquired" by a physician in the course of treating a patient, as long as that information is necessary to treat the patient. We therefore reject the prosecutor's argument that the privilege does not apply to unconscious persons.

IV

The prosecutor next argues that the statutory physician-patient privilege should not apply in this case because the prosecutor's need for specific evidence in a criminal proceeding should defeat the privilege. As the prosecutor argues, "[w]here specific evidence is needed in a prosecution, general claims of privilege must yield." The prosecutor relies on two cases to support this proposition: *United States v Nixon*, 418 US 683; 94 S Ct 3090; 41 L Ed 2d 1039 (1974), and *People v Johnson*, 111 Mich App 383; 314 NW2d 631 (1981).

In *Nixon*, the United States Supreme Court considered a claim of executive privilege advanced by the

President of the United States in an attempt to quash a third-party subpoena duces tecum. The *Nixon* Court rejected application of the claimed privilege on the facts of that case, given the prosecutor's specific need for evidence relevant to a pending criminal trial. In reaching that decision, the *Nixon* Court relied heavily on the generalized nature of the President's claim of executive privilege:

> *A President's acknowledged need for confidentiality in the communications of his office is general in nature,* whereas the constitutional need for production of relevant evidence in a criminal proceeding is specific and central to the fair adjudication of a particular criminal case in the administration of justice. Without access to specific facts a criminal prosecution may be totally frustrated. The President's *broad interest in confidentiality of communications* will not be vitiated by disclosure of a limited number of conversations preliminarily shown to have some bearing on the pending criminal cases.
>
> We conclude that when the ground for asserting privilege as to subpoenaed materials sought for use in a criminal trial is based *only on the general interest in confidentiality,* it cannot prevail over the fundamental demands of due process of law in the fair administration of criminal justice. The generalized assertion of privilege must yield to the demonstrated, specific need for evidence in a pending criminal trial. [*Nixon, supra* at 712-713 (emphasis added).]

In *Nixon,* the claimed privilege was not rooted in specific statutory or constitutional language. In contrast, the present case involves a statutory privilege created by our state legislature. Because the present case does not require evaluation of a "general interest in confidentiality" or a "generalized assertion" of privilege, but requires application of specific statutory language, we do not believe that the *Nixon* analysis applies here.

The prosecutor, however, points to *Johnson, supra,* in which this Court applied the *Nixon* holding to a claim of physician-patient privilege. In *Johnson,* the prosecutor charged the defendant with knowingly or intentionally acquiring or obtaining possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge. MCL 333.7407(1)(c); MSA 14.15(7407)(1)(c). The prosecutor's theory of the case was that the defendant obtained a prescription for the controlled substance from his doctor, but altered the number of tablets on that prescription before attempting to obtain the controlled substance at the pharmacy. The defendant moved to exclude the physician's testimony regarding the number of tablets originally prescribed, arguing that the information was protected by the physician-patient privilege. The trial court denied the motion to suppress on the ground that the defendant had waived the privilege by failing to object to the physician's testimony at the preliminary examination. *Johnson, supra* at 386.

On appeal, this Court affirmed the trial court's decision, relying on three separate grounds to support its holding that the privilege did not bar the physician's testimony. First, this Court held that the trial court properly denied the defendant's motion to suppress the physician's testimony because the defendant failed to object to the introduction of that testimony at the preliminary examination. *Id.* at 386-388. Second, this Court held that the privilege did not apply because the proffered testimony related to a communication made by the defendant " 'in the furtherance of an unlawful or criminal purpose.' " *Id.* at 390-391, quoting 3 Jones, Evidence (6th ed), § 21.29, p 823. Finally, this Court held that, "where the evidence

sought is 'demonstrably relevant' to the [criminal] case at issue, a generalized claim of privilege must yield to the specific need for evidence." *Johnson*, *supra* at 389, citing *People v Emanuel*, 98 Mich App 163, 187; 295 NW2d 875 (1980). To support this final ground for rejecting the claim of privilege, the *Johnson* Court referenced the *Nixon* holding in a footnote, which stated:

> See also *United States v Nixon*, 418 US 683; 94 S Ct 3090; 41 L Ed 2d 1039 (1974), where the Supreme Court, in a discussion of executive privilege, balanced the competing interests of the parties and held that a generalized assertion of privilege must yield to the demonstrated specific need for evidence in a pending criminal trial. [*Johnson*, *supra* at 389, n 4.]

The prosecutor argues that the *Johnson* holding requires abrogation of the statutory physician-patient privilege in all cases where a prosecutor advances a claim of need for a specific piece of evidence in order to pursue a criminal prosecution. We disagree.

First, we believe that *Johnson* is distinguishable from the present case. In *Johnson*, the physician's testimony regarding the number of tablets initially prescribed was absolutely essential to the prosecution. As this Court stated, "[t]he prescription could only be verified by the physician who issued it. Without the doctor's testimony, convictions for forgeries of prescriptions would be well-nigh impossible." *Id.* at 389. In the present case, the prosecutor argues that the blood test results are similarly essential to the case against defendant. We disagree. Blood test results are not the sole means of proving intoxication, and manslaughter convictions are not precluded by the exclusion of such evidence. Presumably, the prosecutor

could introduce the testimony of various witnesses who observed defendant consume alcohol on the night in question, if in fact that occurred. Because the need for this specific evidence is not as compelling as the need for specific evidence found in the *Johnson* case, we believe that holding is distinguishable.

Second, we note that the statutory physician-patient privilege does not distinguish between criminal and civil proceedings, and appellate courts of this state have applied the statute in both contexts. *Keskimaki, supra* at 246; *Swickard, supra* at 559; *Baker v Oakwood Hosp Corp*, 239 Mich App 461, 468; 608 NW2d 823 (2000). In fact, the Legislature has already provided specific and narrowly tailored exceptions to the statutory privilege, applicable in criminal cases. MCL 257.625a(6)(e); MSA 9.2325(1)(6)(e) provides:

> If, after an accident, the driver of a vehicle involved in the accident is transported to a medical facility and a sample of the driver's blood is withdrawn at that time for medical treatment, the results of a chemical analysis of that sample are admissible in any civil or criminal proceeding to show the amount of alcohol or presence of a controlled substance or both in the person's blood at the time alleged, regardless of whether the person had been offered or had refused a chemical test. The medical facility or person performing the chemical analysis shall disclose the results of the analysis to a prosecuting attorney who requests the results for use in a criminal prosecution as provided in this subdivision. A medical facility or person disclosing information in compliance with this subsection is not civilly or criminally liable for making the disclosure.

Our Supreme Court has recognized that, by enacting this statute, "[t]he Legislature decided to abrogate the physician-patient privilege" in specific factual circumstances. *People v Perlos*, 436 Mich 305, 326; 462

NW2d 310 (1990). The Court cautioned that the Legislature did not create "a sweeping abandonment of the physician-patient privilege," but created a "carefully tailored" and "narrowly defined" exception to the privilege. *Id.* at 328.

Similarly, this Court has held that the Legislature impliedly created an exception to the physician-patient privilege by enacting MCL 750.411; MSA 28.643, which requires medical personnel to report wounds inflicted by deadly weapons. *People v Traylor*, 145 Mich App 148, 151-152; 377 NW2d 371 (1985). That statute provides in part:

> It shall be the duty of every person, firm or corporation conducting any hospital or pharmacy in this state, or the person managing or in charge of such hospital or pharmacy, or in charge of any ward or part of such hospital, to which any person or persons suffering from any wound or other injury inflicted by means of a knife, gun, pistol or other deadly weapon, or by other means of violence shall come or be brought, to report the same immediately, both by telephone and in writing, to the chief of police or other head of the police force of the village or city in which such hospital or pharmacy is located, or to the sheriff of the county, if such hospital or pharmacy is located outside the incorporated limits of a village or city. Such report shall state the name and residence of such person, if known, his whereabouts and the character and extent of such injuries. It shall also be the duty of every physician, or surgeon, who has under his charge or care any person suffering from any wound or injury, inflicted in the manner above mentioned, to make a like report to the appropriate officers hereinabove named.

These two statutory exceptions to the physician-patient privilege demonstrate that the Legislature intended the privilege to apply generally in criminal cases, subject only to a few "carefully tailored" and

"narrowly defined" exceptions. *Perlos, supra* at 328. For this Court to create a broad exception to the statutory privilege, applicable in all criminal cases, would clearly be inconsistent with the Legislature's intent as expressed in its statutes. Therefore, we reject the prosecutor's invitation to create such an exception. We leave it to the Legislature's discretion to create additional exceptions to the statutory privilege.

Affirmed.