STATE of Minnesota, Respondent,

v.

Howard Roy KITTO, Appellant.

No. C3–83–1299.

Supreme Court of Minnesota.

Aug. 23, 1985.

Rehearing Denied Sept. 23, 1985.

C. Paul Jones, Minnesota State Public Defender, Michael F. Cromett, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Minnesota Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Vernon E. Bergstrom, Chief, Appellate Section, Michael Richardson, Asst. County Atty., Minneapolis, for respondent.

WAHL, Justice.

Defendant was charged in district court with burglary, Minn.Stat. § 609.58, subd. 2(1)(b) (1982) (amended in 1983 and recodified at Minn.Stat. § 609.582 [1984]) (burglary of dwelling accompanied by sexual assault upon a person therein), and with criminal sexual conduct in the first degree, Minn.Stat. § 609.342(c) (1984) (forced sexual penetration of complainant who reasonably fears imminent great bodily harm). A district court jury found defendant not guilty of the burglary charge but guilty of the sexual assault charge. The trial court sentenced defendant to an executed term of 76 months in prison, which is the presumptive sentence for the offense (VIII) by a person with defendant's criminal history score (three). On this appeal from judgment of conviction, defendant does not challenge the sufficiency of the evidence but seeks a new trial on one or more of three grounds: (1) error by the trial court in refusing to let defense counsel question a juror about his friendship with another attorney in the office of the prosecutor trying the case, a friendship that the prosecutor did not disclose until after defense counsel had accepted the juror; (2) error by

the trial court in admitting evidence that as a result of the sexual assault by defendant the complainant became pregnant and then had an abortion; and (3) misconduct by the prosecutor in his closing argument. We affirm.

1. The first issue relates to the jury selection process. The method used was that outlined in Minn.R.Crim.P. 26.02, subd. 4(3)(b), which provides:

(3) Order of Drawing, Examination and Challenge.

\* \* \* \* \* \*

(b) By Order of Court. The court may order that the jurors be drawn, examined and challenged as provided by Rule 26.-02, subd. 4(3)(b) or (c) as follows:

1. The court shall first direct that such a number of the members of the jury panel be drawn and called as will equal the number of which the jury shall be composed for trial of the case plus the number of any alternate jurors.

2. The prospective jurors so drawn and called shall take their place in the jury box and be sworn to answer truthfully questions asked them relative to their qualifications to serve as jurors in the case.

3. The prospective jurors shall be examined as to their qualifications, first by the court, then by the parties, commencing with the defendant.

4. Upon completion of defendant's examination of a prospective juror, the defendant shall be permitted to exercise a challenge for cause or a peremptory challenge as permitted by these rules as to that juror. If the juror is excused, he shall be replaced by another member of the panel. The replacement juror shall be examined and challenged after all previously drawn jurors have been examined and challenged.

5. Upon completion of the examination and any challenge of each prospective juror by the defendant, the state may examine such prospective juror and may challenge the juror for cause or peremptorily. If the juror is excused, he shall be replaced by another member of the panel who shall be subject to examination and challenge in accordance with this rule.

6. This process of jury selection shall continue until the number of persons of which the jury shall be composed for trial of the case plus any alternate jurors is selected and sworn as the trial jury.

One of the jurors selected was Clark Griffith, a member of the Griffith family that owned the Minnesota Twins professional baseball team. Before either attorney questioned Mr. Griffith, the prosecutor trying the case, James Faber, mentioned to fellow prosecutor John Brink and others that Griffith was a prospective juror. Brink apparently responded that he knew him. There is no transcript of voir dire. The parties have stipulated that the trial court asked background questions of the prospective jurors including, "Do you know anyone in law enforcement?" Juror Griffith answered "No." During his lengthy interrogation of Griffith, defense counsel did not ask him if he knew anyone in the county attorney's office. Defense counsel did disclose in his questioning that he and Griffith had been fellow freshmen at the University of Minnesota Law School and that he had read an article about Griffith in some national sports magazine. The prosecutor questioned Griffith after defense counsel completed his questioning and accepted him. The prosecutor asked Griffith if he knew anyone in the county attorney's office and Griffith said that he had known John Brink for about 10 years. In response to further questioning by the prosecutor, he apparently stated that he felt that at the conclusion of the case he might talk to Brink about the case but did not feel that he would have to justify his decision to anyone and that he could make decisions on his own. After the prosecutor accepted Griffith, defense counsel approached the bench and asked the court if he could exercise one of his peremptory challenges against Griffith. The court denied the request and also denied defense counsel's challenge for cause, as well as a request that he be permitted to examine Griffith

further to lay the foundation for a challenge for cause. The matter then was discussed on the record out of the hearing of the jury. After listening to the arguments, the trial court stated:

When counsel initially approached the bench, there was no question that from the answers given by Mr. Griffith that there was not a basis for a challenge for cause. Not only was no claim made, but it was the Court's evaluation of his responses to the answers given to questions both by Mr. Boone and Mr. Faber that there was no indication that his friendship or knowledge regarding Mr. Brink, other persons in the County Attorney's office or other relationships, would indicate an inability on his part to be a fair and impartial juror, which is in fact the standard.

Mr. Boone, following an opportunity for a complete inquiry, did not challenge the prospective juror for cause nor did he seek to exercise a peremptory challenge. It is a situation that according to the Rules the peremptory must be exercised in a timely fashion. Notwithstanding, if from the responses Mr. Griffith gave to the questions as to an area that Mr. Boone was apparently not aware of and inadvertently failed to inquire on, it indicated in the Court's mind that the juror was either expressly or impliedly biased, the Court would either question the juror, which was not asked, or would permit counsel to inquire relative to a challenge for cause. I think at this stage the exercise of a peremptory challenge is no longer available to the defendant, and as the Court previously indicated, in closely listening to the responses given by the prospective juror, the Court found no basis for a challenge for cause. It is on that basis that the Court denied an opportunity for the defendant to exercise a peremptory and denied the defendant's request, which I must indicate was made in a timely fashion at the bench, for an opportunity to question. At that time the Court denied the requests of Mr. Boone and indicated that I would afford

him an opportunity to make a record, which is taking place at this time.

▪ The Rules of Criminal Procedure do not address the issue whether the prosecutor should disclose to defense counsel before voir dire any information that the state has that might bear on defendant's exercise of his challenges for cause or his peremptory challenges. We note that this court has always encouraged the relinquishing of information as a vehicle of criminal discovery. We support the notion that "the ends of justice will best be served by a system of liberal discovery which gives both parties the maximum possible amount of information * * *." *Wardius v. Oregon*, 412 U.S. 470, 473, 93 S.Ct. 2208, 2211, 37 L.Ed.2d 82 (1973). In the absence of a rule, however, the decision with regard to disclosure of information which an attorney may have that a particular prospective juror might not be able to be fair is best left to the discretion of the trial court. The trial court has both the ability and the information to decide whether a contact between a lawyer and a juror has such significance that it should have been disclosed. In light of that ability and information, the court can then decide whether failure to disclose rises to the level of prejudice. The trial court's decision in this case was not in error.

▪ Whether the trial court erred in refusing to let defense counsel question Griffith after accepting him as a juror is a separate issue. Minn.Stat. § 631.26 (1971), which formerly governed, provided in relevant part:

A challenge to an individual juror is either peremptory, or for cause. It shall be taken when the juror appears, and before he is sworn; but the court, for good cause, may permit it to be taken after he is sworn, and before the jury is completed.

We interpreted this statute as giving the trial court discretion to permit peremptory challenges by the state or by the defendant for good cause shown even after the particular juror is sworn, so long as the challenge is made before the entire jury is

impaneled. *Kelsey v. State*, 298 Minn. 531, 214 N.W.2d 236 (1974); *State v. Mastrian*, 285 Minn. 51, 171 N.W.2d 695 (1969), *cert. denied*, 397 U.S. 1049, 90 S.Ct. 1381, 25 L.Ed.2d 662 (1970); *State v. Lupino*, 268 Minn. 344, 129 N.W.2d 294 (1964), *cert. denied*, 379 U.S. 978, 85 S.Ct. 681, 13 L.Ed.2d 569 (1965). *See generally*, Annot., 3 A.L.R.2d 499 (1949 & Supp.1985). Section 631.26 has been superseded by Rule 26.02, subd. 5(2), which reads:

> A challenge for cause may be oral and shall state the grounds on which it is based. The challenge shall be made before the juror is sworn to try the case, but the court for good cause shown may permit it to be made after he is sworn but before all the jurors constituting the jury are sworn.

The Advisory Committee Comment states that this provision "adopts substantially the provisions of Minn.Stat. § 631.26 (1971)." The rule speaks only of challenges for cause, but we hold that it also applies to peremptory challenges. The rule seems to indicate that the right to exercise a peremptory challenge continues until the juror is sworn. If this is so, then whenever voir dire is conducted according to the procedure specified in subdivision 4(3)(b) or subdivision 4(3)(c) the defendant need comply with the requirement that he accept the juror or make his challenge before the prosecutor questions the juror. Accordingly, we construe subdivision 5(2) to mean that the right to make a peremptory challenge expires either when the attorney accepts the juror or when the juror is sworn, whichever is earlier. Thus, once defendant accepted Juror Griffith, he lost his *right* to challenge him peremptorily.

In *Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965), the United States Supreme Court stated in dictum that "the denial or impairment of the right [to make peremptory challenges] is reversible error without a showing of prejudice." Assuming that that is so, we deal here not with the denial or impairment of the right to make peremptory challenges but with the trial court's exercise of its discretion to allow or deny the use of a peremptory challenge after the defendant's right to make the challenge has expired.

The period during which the trial court has discretion to permit a peremptory challenge begins when the right to make the challenge expires and continues until the entire jury has been impaneled. Although we generally believe that trial courts ought to be liberal in exercising this discretion, we do not believe that the court was obligated to allow the challenge in this case. While the court could have allowed the challenge, we do not believe that the court clearly abused its discretion in not doing so and we therefore conclude that defendant is not entitled to a new trial on this ground.[1] The advantages of the uni-

---

1. We note that if the parties had used the so-called "uniform rule" of jury selection, provided in Rule 26.02, subd. 4(3)(a), the problem presented in this case would have been avoided. Subdivision 4(3)(a) provides that the jurors shall be drawn, examined and challenged as follows:

1. The court shall first direct that such a number of the members of the jury panel be drawn and called as will equal the number of which the jury shall be composed for trial of the case plus the number of peremptory challenges available to all the parties and the number of any alternate jurors.

2. The prospective jurors so drawn and called shall take their place in the jury box and be sworn to answer truthfully questions asked them relative to their qualifications to serve as jurors in the case.

3. The prospective jurors shall be examined as to their qualifications, first by the court, then by the parties, commencing with the defendant.

4. A challenge for cause may be made at any time during voir dire by any party. At the close of voir dire any additional challenges for cause shall be made, first by the defense and then by the prosecution.

5. If any prospective juror is challenged and excused for cause another shall be drawn from the jury panel so that the number in the jury box will remain equal to the number initially called.

6. After both parties have had an opportunity to challenge for cause, each, commencing with the defendant, may exercise alternately the peremptory challenges permitted by these rules.

7. When the peremptory challenges have been exercised, the jury shall be selected from the remaining prospective jurors in the order in which they were called until the number

form rule are discussed as follows in III ABA Standards for Criminal Justice, § 15–2.6 at 15.70 (1980):

The Supreme Court observed in *Swain v. Alabama* [380 U.S. 202, 218, 85 S.Ct. 824, 834, 13 L.Ed.2d 759 (1965) ] that the approach [used in the uniform rule], as opposed to other types of peremptory challenge, has been praised "as a fairer system to the defendant and prosecutor and a more efficacious, quicker way to obtain an impartial jury satisfactory to the parties." * * * [E]ach party, at the time of each peremptory challenge, is confronted with the total number of persons from whom the final jury will be formed, and thus is always in a position to exclude the person found to be most objectionable. Under the other systems, by contrast, there is always the chance of some other person or persons coming on the panel who are more objectionable than those already challenged.

2. Defendant's next contention is that the trial court erred in admitting evidence that as a result of the sexual assault by defendant the complainant became pregnant and then had an abortion. In *State v. Boyd*, 331 N.W.2d 480 (Minn.1983), a pretrial appeal, we ruled that in a prosecution for sexually penetrating a 14-year-old girl, scientific evidence that the defendant was the father of a baby which was subsequently born to the victim was admissible to prove that sexual penetration occurred. We stated:

There are a number of cases in other jurisdictions dealing with the admission of evidence of subsequent pregnancy to establish that the crime occurred (in the context of statutory rape) or that penetration occurred (in the context of non-statutory rape). * * * However, the general view expressed in these cases is that the evidence may not be admitted to prove identity, that is, that it was the defendant who committed the act of penetration.

None of these cases confronts the issue of admission of evidence of the sort in this case. That is because the scientific advances which have made possible the sort of testimony used in this case are relatively recent. * * * *

In dealing with the issue, we prefer to start with the elementary proposition that an act of sexual penetration is a physical act and the related proposition that a man who commits such an act often leaves behind physical evidence connecting him to the act.

\* \* \* \* \* \*

In this case we are dealing with a form of physical evidence left by the rapist. 331 N.W.2d at 481–82 (citations omitted).

■. Evidence of the resultant pregnancy in this case was proof of the element of sexual penetration. Evidence of the abortion had some minimal relevance to the issue of consent. Thus, the trial court did not abuse its discretion in admitting evidence of complainant's medical history which resulted from the sexual assault by defendant. We need not decide whether under the circumstances the defendant should have been permitted to counter this evidence by showing that the victim had also had an abortion in 1980. Any error in refusing to admit this evidence was non-prejudicial.

■ 3. Defendant's final contention is that the prosecutor committed misconduct in his closing argument. Defendant cites a number of statements by the prosecutor which he believed were objectionable. His attorney objected to only one of these statements at trial and responded in his closing statement to the other parts of the prosecutor's argument that he found objectionable. Our examination of the prosecutor's closing argument satisfies us that the prosecutor did not commit prejudicial misconduct.

Affirmed.

selected equals the number of which the jury shall be composed for trial of the case plus

the alternate jurors, if any.