STATE of Minnesota, Respondent,

v.

Janet Michelle KAUL, Appellant.

No. C7–89–1657.

Court of Appeals of Minnesota.

June 26, 1990.

Review Denied Aug. 7, 1990.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey County Atty., Darrell C. Hill, Asst. County Atty., St. Paul, for respondent.

John M. Stuart, State Public Defender, Marie L. Wolf, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by LANSING, P.J., and FORSBERG and SCHULTZ,* JJ.

## OPINION

FORSBERG, Judge.

Appellant Janet Kaul was convicted of felony murder and sentenced to the presumptive sentence of 105 months. Among other things, Kaul claims the trial court erred in allowing the state to exercise a peremptory challenge after the close of evidence. We affirm.

## FACTS

Kaul and the decedent Brian Guzman lived together for approximately 13 years. Both Kaul and Guzman were heavy drinkers who argued and fought while drinking. Testimony at trial from Kaul, her daughter, and other witnesses related several incidents where Guzman had beaten Kaul. Following the birth of another child in 1984, however, Guzman stopped initiating fights between himself and Kaul and Kaul began to fight back.

On December 2, 1988, Kaul and Guzman drank beer and brandy and smoked marijuana throughout the afternoon and evening. Kaul prepared dinner and placed the butcher knife she used behind the sink when she finished. At midnight, Kaul drove to a friend's house and returned home at approximately 4:20 a.m. Kaul's daughter heard Kaul accusing Guzman of calling to check up on her. She looked down through a floor vent and saw Kaul swinging her fists at Guzman; Guzman was only blocking the blows and not striking back. Kaul testified she did not remember what the fight was about, nor does she recall striking Guzman.

Kaul's daughter ran downstairs and told Kaul it was she, not Guzman, who had telephoned her. Kaul then charged at her daughter and they began punching each other. After a struggle, Guzman was able to pin Kaul to the couch. Kaul continued to fight Guzman, attempting to bite him on the chest. Her daughter then left the house.

Guzman held Kaul down for a short time and then got up and went into the kitchen. After a little while, Kaul followed him. Kaul started arguing with Guzman again and they began wrestling with each other. She did not know who grabbed the knife, but recalled seeing the knife over her head. She stated that she did not know Guzman was injured until he told her to get help.

Kaul called 911 for assistance for a self-inflicted stab wound. The paramedics arrived at 4:58 a.m. Guzman did not respond to any emergency treatment and was taken to the hospital by ambulance at 5:25 a.m. He was pronounced dead on arrival.

When the investigating officer first questioned Kaul, she told him Guzman had broken into the house and stabbed himself. Upon further questioning, Kaul admitted that she and Guzman had been arguing, and asserted that Guzman had grabbed the knife and during a struggle, she had deflected the knife into his body. Kaul identified the knife found partially submerged in the kitchen sink. Kaul was then taken to the police station where she submitted to

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

an Intoxilyzer test. At 6:45 a.m., Kaul's blood alcohol content was .13.

At approximately 8:20 a.m., Kaul told a police sergeant that Guzman had been hitting her and somehow someone grabbed a knife and Guzman got cut. When asked if she considered herself drunk when she came home, Kaul shook her head no. The sergeant noted that Kaul smelled of alcohol and had dried blood on her right forearm. When the sergeant questioned Kaul later, she claimed she was drunk when she came home and did not remember arguing with Mary. She thought that Guzman had hit her once. She then admitted she had picked up the knife and stabbed Guzman when he tried to grab her hands and put them behind her back.

After trial, the jury acquitted Kaul of second degree intentional murder and first degree manslaughter, but found her guilty of second degree felony murder.

## ISSUES

1. Did the trial court commit reversible error in allowing the state to exercise a peremptory challenge after the jury was impaneled and after the close of evidence?

2. Is the evidence sufficient to sustain appellant's conviction?

3. Did the trial court err in refusing to give a jury instruction on the lesser included offense of manslaughter in the second degree?

4. Did the trial court abuse its discretion in refusing to downwardly depart from the presumptive sentence?

## ANALYSIS

1. Kaul argues that the trial court erred in allowing the state to use a peremptory challenge after the close of evidence. After the jury was impaneled, but before the close of the first day of trial, a juror informed the court that her son had been involved in an incident with a knife and, as a result, went through a treatment program. The court informed the attorneys at that time but neither the parties nor the judge took any action. After the close of evidence, the judge permitted the attorneys to question the juror. She stated that there was nothing about her experience which would affect her ability to be fair and open-minded. In fact, she felt she would be better able to judge fairly because of it.

The prosecutor requested that the state be allowed to use its one remaining peremptory challenge to strike the juror. Kaul's attorney objected. The trial court agreed to strike the principal juror and substitute the alternate. The court found no prejudice to Kaul because there was an alternate juror to take her place who was acceptable to the defense.

A party has the right to exercise a challenge for cause or a peremptory challenge to exclude a juror appearing unfavorable to that party. See Minn.R.Crim.P. 26.02. This right expires "either when the attorney accepts the juror or when the juror is sworn, whichever is earlier." State v. Kitto, 373 N.W.2d 307, 311 (Minn. 1985). After that time but before the entire jury is impaneled, the trial court has the discretion to permit a peremptory challenge. Id. Exercise of a peremptory challenge after the jury has been impaneled is error. See State v. Mastrian, 285 Minn. 51, 66, 171 N.W.2d 695, 705 (1969), cert. denied, 397 U.S. 1049, 90 S.Ct. 1381, 25 L.Ed.2d 662 (1970).

In this case, the trial court allowed the state to exercise a peremptory challenge after the trial was completed. The court erred in doing so. Kaul argues that this error impaired her right to a fair trial such that she is automatically entitled to a new trial. See Swain v. Alabama, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965) ("The denial or impairment of this right [to make a peremptory challenge] is reversible error without a showing of prejudice"), overruled on other grounds by Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

While impairment of the right to make peremptory challenges may authorize reversal without a showing of prejudice, once the parties accept a juror, that right expires. Kitto, 373 N.W.2d at 311. The

court then is not faced with denial of a right. Rather, the exercise of a peremptory challenge after the jury had been sworn, is harmless unless the defendant can show prejudice. *Mastrian*, 285 Minn. at 66–67, 171 N.W.2d at 705.

Kaul maintains that she was prejudiced by the state having the opportunity to watch the juror during the entire trial and then, having decided the juror was unsuitable, strike her. We disagree. The trial court was satisfied that the state would have exercised the peremptory challenge if the information had been disclosed in a timely manner. The alternate who took the principal juror's place was present for all the testimony. Kaul has pointed to no reason why the alternate could not be fair. Furthermore, Kaul had previously approved of the alternate juror. Thus, while the exercise of the peremptory challenge after the close of evidence was error, that error was harmless.

2. On appeal, Kaul claims the evidence was insufficient for the jury to conclude (1) she was capable of forming the intent to commit assault and (2) she did not act in self-defense. In reviewing sufficiency of the evidence, this court must determine whether, viewing the evidence and reasonable inferences drawn from that evidence in a light most favorable to the state, the jury could reasonably find the defendant guilty beyond a reasonable doubt. *State v. Buchanan*, 431 N.W.2d 542, 547 (Minn. 1988).

■ Kaul argues that she was incapable of forming the intent necessary to commit second degree assault (assault with a dangerous weapon) because she was intoxicated. That a defendant was drinking alcohol does not create a presumption of intoxication and the possibility of intoxication does not create a presumption that a person is incapable of forming the intent to commit an act. *State v. Wahlberg*, 296 N.W.2d 408, 418 (Minn.1980). The reviewing court will not reverse the jury's conclusion on intoxication if the record contains sufficient evidence to support the conclusion even though some evidence to the contrary exists. *Buchanan*, 431 N.W.2d at

549 (quoting *State v. Neumann*, 262 N.W.2d 426, 432 (Minn.1978)).

■ Although Kaul's blood alcohol content was most likely between .14 and .17 at the time of the incident, her daughter and two police officers testified that Kaul knew and understood what she was doing despite her level of intoxication. Therefore, sufficient evidence exists to support the jury's conclusion that Kaul's intoxication did not prevent her from intending to assault Guzman.

■ Kaul also maintains she acted in self-defense. To justify the taking of a life in self defense, there must be an absence of aggression or provocation on the part of the slayer and the slayer must retreat to avoid danger, if reasonably possible. *State v. Morgan*, 296 N.W.2d 397, 402 (Minn. 1980). If the defendant raises a self-defense claim, the state must prove beyond a reasonable doubt that the killing was not justified. *Buchanan*, 431 N.W.2d at 548.

■ From the unrebutted testimony that Guzman walked away from the conflict and Kaul followed him, the jury could have reasonably concluded that Kaul was the aggressor and failed to retreat once the fighting temporarily ceased. Therefore, the state met its burden of proving Kaul did not act in self-defense.

■ 3. Kaul argues that the trial court should have given an instruction on the lesser included offense of second degree manslaughter (culpable negligence). The determination of what lesser included offenses to submit to the jury is within the sound discretion of the trial court; however, the trial court must give an instruction when the evidence warrants it. *Bellcourt v. State*, 390 N.W.2d 269, 273 (Minn.1986) (citations omitted). To determine when lesser degrees of the charged offense must be submitted to the jury, the court must consider whether the evidence would: (1) reasonably support a conviction on the lesser offense, and (2) justify an acquittal on the offense charged. *State v. Leinweber*, 303 Minn. 414, 422, 228 N.W.2d 120, 125–26 (1975).

In this case, the medical examiner testified that given the dullness of the knife and the length of the stab wound, substantial force was required to cause the injury. Furthermore, considering the angle of the wound and the presence of other bruises and abrasions on the body, the doctor concluded the wound was neither self-inflicted nor the result of an accidental deflection of the knife. Consequently, the trial court did not abuse its discretion in concluding the evidence did not support a finding of culpable negligence. *See State v. Mitjans,* 408 N.W.2d 824, 833 (Minn. 1987).

4. Kaul contends that the trial court abused its discretion in refusing to downwardly depart from the presumptive sentence. The trial court must use the presumptive sentence unless there are substantial and compelling reasons justifying departure. *State v. Garcia,* 302 N.W.2d 643, 647 (Minn.1981). The reviewing court will not interfere with the trial court's broad discretion unless there has been a clear abuse of discretion. *See id.* Only a rare case would warrant reversal for refusal to depart. *State v. Kindem,* 313 N.W.2d 6, 7 (Minn.1981).

Minnesota Sentencing Guidelines II.D.2.a. lists several mitigating factors which justify a downward departure. Kaul claims the physical and mental abuse Guzman inflicted on her throughout their relationship warranted a downward departure. *See State v. Hennum,* 441 N.W.2d 793, 801 (Minn.1989). This conclusion, however, is not supported by the evidence. Kaul had not been repeatedly subject to physical abuse from Guzman within recent years. Thus, this case differs markedly from the severe and unique circumstances in *Hennum.* The trial court did not abuse its discretion in sentencing Kaul to 105 months as recommended by the presentence investigation.

## DECISION

The trial court's error in permitting the prosecutor to exercise a peremptory challenge after the close of evidence was harmless. The trial court did not err in refusing to give a lesser included offense instruction. Likewise, the court did not abuse its discretion in refusing to downwardly depart from the presumptive sentence. Finally, the evidence supports Kaul's conviction for second degree felony murder.

Affirmed.