*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 7, 2020

Plaintiff-Appellee,

v

No. 344679
Macomb Circuit Court
LC No. 2017-003741-FH

JAMES EDWARD GARLINGER,

Defendant-Appellant.

Before: FORT HOOD, P.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

Defendant, James Edward Garlinger, appeals as of right his jury trial conviction of third-degree criminal sexual conduct (victim 13 to 15 years of age), MCL 750.520d(1)(a) (third-degree CSC). The trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to 45 to 75 years in prison. We affirm.

## I. FACTS

Two days after her 15th birthday, IW, who is developmentally delayed, was sexually assaulted by defendant, who was engaged to IW's mother at the time. The assault occurred in IW's bedroom as she was playing with her dolls or organizing her birthday presents, and while her mother was at home sleeping. The next day, IW burst into tears during gym class and told her friends and gym teacher what had happened. IW's school counselor called IW's mother, who took IW to Turning Point, where she was interviewed and physically examined by a forensic nurse. Her medical examination revealed redness on her groin and bright red blood around her cervix. Defendant's DNA was found on her breast. At trial, through the testimony of IW and others, evidence was entered into the record that defendant had been sexually assaulting IW for approximately two months. During that time, IW and defendant communicated by phone and text. IW testified that defendant took pictures and videos of the assaults with his phone. A picture of her taken during an assault was found on his phone.

Defendant's biological daughter, MW, who was 27 years old at the time of trial, testified that defendant had performed strikingly similar sexual acts on her from her earliest memory at approximately age three until she was removed from the home and placed in foster care when

-1-

she was seven. Defendant had threatened to cut off her hair and have her raped and killed by another man if she told anyone.

## II. SIMILAR ACTS EVIDENCE

Defendant first argues that testimony of other, uncharged acts against IW, should have been excluded because IW could not recall sufficient details regarding these acts and because this testimony was extremely prejudicial. He argues further that the testimony of MW should have been excluded because it was irrelevant and it was extremely prejudicial.

Defense counsel preserved these issues by objecting to plaintiff's notification of its intent to introduce other acts evidence. See *People v Knox*, 469 Mich 502, 508; 674 NW2d 366 (2004). We therefore review the decision for an abuse of discretion, though preliminary questions of law regarding admissibility are reviewed de novo. *People v Jackson*, 498 Mich 246, 257; 869 NW2d 253 (2015). An abuse of discretion occurs when a trial court "makes an error of law in the interpretation of a rule of evidence," *id.*, or when an outcome falls outside the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

Generally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," MRE 404(b)(1), but this rule does not apply when a defendant is accused of sexual assault against a child. *People v Watkins*, 491 Mich 450, 471; 818 NW2d 296 (2012). MCL 768.27a(1) provides that, "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." "Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Watkins*, 491 Mich at 470, quoting MRE 401. "A defendant's propensity to commit criminal sexual behavior can be relevant and admissible under [§ 768.27a] to demonstrate the likelihood of the defendant committing criminal sexual behavior toward another minor." *People v Brown*, 294 Mich App 377, 386; 811 NW2d 531 (2011), quoting *People v Petri*, 279 Mich App 407, 411; 760 NW2d 882 (2008). See also *Watkins*, 491 Mich at 470.

Even when other acts evidence is clearly admissible under MCL 768.27a, however, the trial court "must still employ the balancing test of MRE 403." *Brown*, 294 Mich App at 386. See also *People v Dermartzex*, 390 Mich 410, 415; 213 NW2d 97 (1973) ("The trial judge, here as whenever any evidence is offered for any purpose, enjoys the discretion of excluding relevant evidence if its probative value is outweighed by the risks of unfair prejudice, confusion of issues or misleading the jury").[1] As a balancing test, MRE 403 "involves two sides of a scale—a

---

[1] MRE 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

probative side and a prejudicial side." *Watkins*, 491 Mich at 486. "Propensity evidence is prejudicial by nature," which is why it is normally precluded under MRE 404(b). *Id*. Therefore, in order to effectuate the policy underlying MCL 768.27, evidence allowed under that statute must be weighed more heavily for its probative value than for its prejudicial effect. *Id*. at 487. Other acts evidence under these circumstances "may not be excluded . . . as overly prejudicial merely because it allows a jury to draw a propensity inference." *Id*. In *Watkins*, the Michigan Supreme Court provided an illustrative list of considerations for trial courts when applying MRE 403 in this context. *Id*. at 487-488. These considerations include:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich at 487-488.]

Here, the trial court granted plaintiff's motion to use similar acts evidence pursuant to MCL 768.27a because it was relevant to show that the current allegations were not false. After considering the *Watkins* factors, the trial court held that the probative value of this evidence was not substantially outweighed by the danger of prejudice under MRE 403. We agree.

First, the acts are strikingly similar. All were perpetrated on minors who viewed defendant as their father, most if not all of the attacks were from behind with the child face down on a bed or couch, defendant penetrated both children vaginally and anally on multiple occasions with his penis as well as "sex toys," and defendant created visual records of his attacks.

Second, there was temporal proximity between the acts for which defendant was charged in this case and the other acts he committed against IW; all of the attacks took place within a couple of months. The apparent lack of temporal proximity of the other act he committed against MW (some 20 years before the assaults on IW) does not weigh in defendant's favor. The gap in time does not make her testimony less probative or more prejudicial because defendant was in prison for 16 of those years for the acts upon MW. In addition, he assaulted IW less than three years after he was released from prison, and nothing in the record showed that defendant was rehabilitated in any way between the time he assaulted MW and the time he assaulted IW.

Third, defendant's acts against MW and IW both occurred with frequency. IW testified that, during the several months over which defendant sexually assaulted her, she did not see him during the week, but it happened every weekend. MW was extremely young when the acts occurred and, therefore, she could not testify as to the exact number, but she believed that it was "multiple, multiple times" over three to four years.

Fourth, there were no discernible intervening acts that would detract from the probative nature of either the other acts evidence related to IW or that related to MW. As mentioned

_____

issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

above, there is no indication in the record that defendant had reformed in any way; rather, there is considerable evidence to the contrary.

Fifth, there is no lack of reliability regarding the testimony supporting the occurrence of the other acts either to IW or to MW. The evidence appears reliable, and it is further bolstered by the fact that defendant pleaded guilty to criminal sexual conduct with respect to his biological daughter. It is also supported by the fact (as will be discussed below) that he admitted to a social worker that at least some of IW's allegations were true.

Finally, there was a clear need for evidence beyond IW's testimony. Defendant did not testify, so the jury had no opportunity to judge his truthfulness. Defendant argues on appeal that IW's testimony was unreliable because she could not recall details such as how many times the other acts occurred, when they occurred, and where they occurred. The record does not support this argument. IW gave many details about the other events, including how often they happened and where. However, IW's developmental delay and the fact that she admitted she lies when afraid might have affected the outcome in defendant's favor without other acts evidence that established defendant's propensity for sexually assaulting children and bolstered IW's credibility.

The similar acts evidence admitted through IW and MW was admissible under MCL 768.27a. And, the evidence was highly probative and was not substantially outweighed by unfair prejudice.

## III. DEFENDANT'S INCULPATORY STATEMENT

Defendant next argues that the trial court abused its discretion in admitting an inculpatory statement he made to an emergency room social worker as evidence at trial because it was privileged and the privilege was neither waived by him nor by operation of law. We review questions of law, such as the interpretation and application of a privilege, de novo. *People v Carrier*, 309 Mich App 92, 104; 867 NW2d 463 (2015). We review the admissibility of evidence for an abuse of discretion, which occurs when a trial court "makes an error of law in the interpretation of a rule of evidence." *Id*. It is also an abuse of discretion when an outcome falls outside the range of principled outcomes. *Babcock*, 469 Mich at 269.

"When interpreting a statute, [courts] follow the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of the Legislature." *Carrier*, 309 Mich App at 104, quoting *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 311 (2013). Because the plain language of a statute provides the most reliable indication of legislative intent, the first step toward proper interpretation of a statute is to examine the plain language. *Carrier*, 309 Mich App at 104. When the statutory language is clear and unambiguous, "the statute must be enforced as written and no further judicial construction is permitted." *Id*., quoting *Whitman*, 493 Mich at 311. When there is ambiguous language, courts "may 'go beyond the statutory text to ascertain legislative intent.' " *Carrier*, 309 Mich App at 104, quoting *Whitman*, 493 Mich at 312. " 'Effect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory.' " *Carrier*, 309 Mich App at 104, quoting *Whitman*, 493 Mich at 311-312.

Statutory privileges are defined narrowly, while exceptions are to be broadly construed. *Carrier*, 309 Mich App at 105, citing *People v Childs*, 243 Mich App 360, 364; 622 NW2d 90 (2000). As we noted in *Carrier*, 309 Mich App at 104-105, our Supreme Court explained the rationale for this rule in *People v Stanaway*, 446 Mich 643, 658; 621 NW2d 557 (1994), stating:

> Unlike other evidentiary rules that exclude evidence because it is potentially unreliable, privilege statutes shield potentially reliable evidence in an attempt to foster relationships. While the assurance of confidentiality may encourage relationships of trust, privileges inhibit rather than facilitate the search for truth. Privileges therefore are not easily found or endorsed by the courts. The existence and scope of a statutory privilege ultimately turns on the language and meaning of the statute itself. Even so, the goal of statutory construction is to ascertain and facilitate the intent of the Legislature.

The social worker testified that she was on duty in the emergency department of the Veterans' Administration (VA) hospital when defendant told her that he was at the emergency room because his girlfriend's 15-year-old daughter had accused him of having sex with her for the previous two months. When asked whether the allegations were true, defendant said, "[s]ome of it is true." Within the next 2½ hours, she had completed a verbal report to Child Protective Services (CPS) and faxed a written report.

Defendant argues that his statement to the social worker was privileged under the psychologist-patient privilege, MCL 333.18237, but does not explain how that statute applies to statements made to a social worker. Plaintiff nonetheless acknowledges that defendant's statement was privileged under MCL 333.18513, which applies to communications with licensed social workers. It is also undisputed that defendant did not waive the privilege in this case. However, privileged communications are also subject to disclosure under other, separate statutory schemes, and the social worker in this case disclosed the challenged information pursuant to one of those—a provision of the Child Protection Law, MCL 722.621 *et seq*.

MCL 722.623(1) (a) states:

> (1) A. physician, dentist, physician's assistant, registered dental hygienist, medical examiner, nurse, person licensed to provide emergency medical care, audiologist, psychologist, marriage and family therapist, licensed professional counselor, *social worker*, licensed master's social worker, licensed bachelor's social worker, registered social service technician, social service technician, a person employed in a professional capacity in any office of the friend of the court, school administrator, school counselor or teacher, law enforcement officer, member of the clergy, or regulated child care provider who has reasonable cause to suspect child abuse or child neglect shall make an immediate report to centralized intake by telephone, or, if available, through the online reporting system, of the suspected child abuse or child neglect. Within 72 hours after making an oral report by telephone to centralized intake, the reporting person shall file a written report as required in this act. [(emphasis added).]

While defendant contends that this section applies only to social workers who are working for CPS, there is no such restriction to be found in the plain language of the statute and defendant

has provided no support for this argument. Moreover, a limitation such as that suggested by defendant would undermine the stated purpose of the statute--the protection of children. See 1975 PA 238, preamble. Pursuant to the plain language of the above statute, the social worker had a duty to report the suspected abuse of IW.

Defendant's position that the reporting statute did not apply to the statement he made because the social worker failed to comply with the statute is also unsupported. As noted in the social worker's written statement, she was a mandated reporter, so she contacted CPS centralized intake, completed a verbal report, and received a log number. She then completed Form DHS-3200, titled "Report of Actual or Suspected Child Abuse or Neglect," which was faxed to centralized intake. In her written statement, she stated that both the verbal report and the form were completed approximately 2½ hours after defendant made the statement. Just as the statute requires, therefore, she made an expeditious initial verbal report and followed it up with a written report within 72 hours. The social worker thus complied with her statutory reporting duties, and the privilege was no waived by any alleged noncompliance.

We note that, though not addressed or raised by defendant, in ruling that defendant's statement was admissible in evidence, the trial court cited to *Carrier*, 309 Mich App 92. In that case, this Court concluded that, in enacting MCL 330.1946 (the disclosure provision of the Mental health Code that was at issue in that case), the Legislature intended the privilege to be abrogated entirely once disclosures were required to be made regarding threats to a third party by a patient. Therefore the statement was admissible in a subsequent court proceeding.

Although the duty to report in this case arises under the Child Protection Law rather than the Mental Health Code, much of our rationale in *Carrier* applies with equal force here. However, in contrast to the Mental Health Code, which provides that "privileged communications shall not be disclosed in civil, criminal, legislative, or administrative cases or proceedings, or in proceedings preliminary to such cases or proceedings, unless the patient has waived the privilege, except in the circumstances set forth in this section," MCL 330.1750(1), the Child Protection Law specifically provides for "excluding evidence in a *civil child protective proceeding* resulting from a report made pursuant to this act." MCL 722.631 (emphasis added). This distinction may arguably may call into question whether the rationale of *Carrier* applies in this criminal court proceeding. Nonetheless, that is a question that we need not decide today, because defendant has not raised the issue and neither party has addressed it.

Moreover, even assuming, without deciding, that it was an error of law, and therefore an abuse of discretion, for the trial court to have allowed the social worker to testify in this case about the privileged statement, we nevertheless find that any such error was harmless. Preserved issues regarding the admissibility of evidence are subject to harmless error analysis. *People v Lyles*, 501 Mich 107, 117-118; 905 NW2d 199 (2017). MCL 769.26 provides, in relevant part:

> No judgment . . . shall be set aside or reversed or a new trial be granted . . . on the ground of . . . the improper admission or rejection of evidence . . . unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of resulted in a miscarriage of justice.

The defendant has the burden to show that "it is more probable than not that the error was outcome determinative." *Lyles*, 501 Mich at 117-118, quoting *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). In order to determine whether the defendant has met this burden, "the reviewing court should focus on the nature of the error in light of the weight and strength of the untainted evidence." *Lyles*, 501 Mich at 118, quoting *People v Elston*, 462 Mich 751, 766; 614 NW2d 595 (2000). Using this standard, an error will be considered harmless when there is "overwhelming evidence of a defendant's guilt." *People v Dumas*, 454 Mich 390, 409; 563 NW2d 31 (1997).

Here, the evidence against defendant was overwhelming. IW's testimony that he had bitten her breast was supported by a finding of defendant's DNA on her breast. Her testimony that he had roughly penetrated her vaginally was supported by red marks on both sides of her groin and a finding of bright red blood around her cervix. A nude picture of her was found on defendant's phone, and evidence of explicit text messages between defendant and her was introduced. The testimony of defendant's biological daughter that he committed similar acts on her as a child also provided strong support for IW's testimony. In the face of this considerable and strong evidence against defendant, he has failed to show that the social worker's testimony was outcome-determinative. We therefore conclude that, even if the trial court abused its discretion in admitting defendant's inculpatory statement, he is not entitled to relief on this issue.

## IV. JURY REQUEST TO REHEAR TESTIMONY

Defendant next argues that he was denied due process when the trial court did not have the victim's entire testimony replayed for the jury. We review a trial court's decision regarding a jury's request to review testimony during deliberations for an abuse of discretion. *People v Carter*, 462 Mich 206, 218; 612 NW2d 144 (2000).

MCR 2.513(P) states:

> If, after beginning deliberation, the jury requests a review of certain testimony or evidence that has not been allowed into the jury room under subrule (O), the court must exercise its discretion to ensure fairness and to refuse unreasonable requests, but it may not refuse a reasonable request. The court may make a video or audio recording of witness testimony, or prepare an immediate transcript of such testimony, and such tape or transcript, or other testimony or evidence, may be made available to the jury for its consideration. The court may order the jury to deliberate further without the requested review, as long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed.

In *Carter*, 462 Mich at 213, the prosecutor and defense agreed that the instructions given to the jury after it requested certain trial testimony violated the (prior version of this) court rule because they precluded the possibility of the jury reviewing trial testimony later in the deliberative process. The Supreme Court agreed that the trial judge's response to the request and its instruction to the jury was deficient, cautioning trial courts:

While it is true that trial transcripts often are not prepared until well after trial, we caution against instructing the jury in this manner as such instruction forecloses to the jury the possibility of later reviewing the requested testimony, e.g., by having the court reporter read back the testimony, and consequently, violates the court rule. [*Id*. at 213, n 10.][2]

In the instant case, the trial court clearly did not foreclose the possibility of the jury rehearing as much testimony as they wished to rehear. At 2:24 p.m. on May 18, 2018, the court responded to the jury's request to rehear the testimony of IW and her mother by explaining to the jury that this was possible, but would require having the jury sit in the courtroom to listen to the testimony. It further explained that it would ask the jury to return to the jury room and attempt to rely on its collective memory and its notes, but specifically said that if the jury still wanted the testimony replayed it would be done.

At 3:38 p.m., the audio portion of IW's testimony was replayed for the jury in response to their renewed request for that testimony only. Thirty minutes later, the court had the playback paused to ask the jury whether it had heard enough or wanted to continue listening. The court emphasized that it was "absolutely" up to them, and that the jury could come back in and continue rehearing testimony if it so chose. It then sent the jury back to the jury room to decide its course of action as a group at 4:20 p.m. Eight minutes after having been dismissed, the jury notified the court that it had reached a verdict, at which time it found defendant guilty.

In *People v McDonald*, 293 Mich App 292; 811 NW2d 507 (2011), we found that the trial court did not err by denying the jury's request to rehear testimony because "the trial court emphasized that it was merely denying their request 'at this time,' " and the jury had only been deliberating for an hour. *Id*. at 297. We did opine that the better practice may have been to tell the jury explicitly that they could make another request if they continued to feel the need to review the testimony. *Id*. Here, the trial court not only complied with the applicable court rule by leaving open the possibility of the jury reviewing the testimony in the future, but also followed the better practice of explicitly telling the jury that any future request would be granted. At no point in the process was the jury prevented from rehearing any part of the testimony that it wished to review. The trial court did not err.

## V. REASONABLENESS OF DEPARTURE SENTENCE

Defendant lastly argues that he is entitled to resentencing because his sentence was unreasonable, and because the trial court failed to explain why the sentence was more proportionate than another sentence would have been. "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). We review the reasonableness of such a sentence for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). A trial court abuses its discretion when it imposes a minimum sentence that violates the

---

[2] The Supreme Court, however, found that the defendant had waived the issue. *Carter*, 462 Mich at 214.

principles of proportionality or fails to provide adequate reasons for the extent of the departure sentence imposed." *Id*. at 471, 476. In evaluating the trial court's sentencing rationale to determine whether the principle of proportionality was met, this Court considers certain factors, including "whether the guidelines accurately reflect the seriousness of the crime," "factors not considered by the guidelines," and factors considered by the guidelines but given inadequate weight." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (internal citations omitted.)

Although the sentencing guidelines are no longer mandatory in Michigan, trial courts are still required to "consult the applicable guidelines range and take it into account when imposing a sentence." *Lockridge*, 498 Mich at 391-392. A minimum sentence within the applicable range is presumptively proportionate. *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011). When there is a departure from the guidelines, however, and a trial court fails to provide an adequate rationale for an upward departure from the minimum sentencing guidelines range, we remand so that the trial court may either resentence the defendant or further articulate its reasons for departure. *People v Steanhouse*, ___ Mich ___; ___ NW2d ___ (2019) (Docket No. 156900), citing *Babcock*, 469 Mich at 258-259.

Here, the range for defendant's minimum sentence under the guidelines was 87 to 290 months (approximately 7 to 24 years). However, because defendant was a habitual offender, MCL 750.12 applied, and that statute carries a mandatory minimum of 25 years (300 months) upon a fourth conviction. The Michigan Department of Corrections recommended a sentence of 22 to 35 years, and plaintiff requested in a sentencing memorandum that the sentence be "at least 40-60 years." The court imposed a sentence of 45 to 75 years' imprisonment.

The trial court explained that the main reasons for sentence imposed were the protection of society and the lack of any potential for rehabilitation. The judge acknowledged that the guidelines contemplate the protection of society, but considered them inadequate in this case. Facts that the judge considered as differentiating this case from similar cases include that defendant committed the same crime against another child victim less than three years after serving a 16-year prison term for similarly victimizing his own daughter, that he sexually preyed on a developmentally delayed child repeatedly over a three-month period although he was not charged with every incident, that he took sexually explicit photos of the victim, and that he clearly has "predilections" toward children. The court also concluded that there was no likelihood of defendant's rehabilitation considering that he failed to reform himself during 16 years in prison and instead reoffended shortly after his release. The prosecutor noted that even the imposition of the statutory mandatory minimum sentence of 25 years would leave the possibility of defendant being paroled back into society. The trial court specifically stated, "I don't think there is any chance that you can be reformed. If 16 years in prison doesn't do it, I don't know what would. . . . I have no doubt . . . that if you were released . . . back into society you would offend again . . . ." The trial court stated that this left it with its primary purpose to protect society and to do so meant to "keep you out of circulation as long as possible." The trial court thus properly considered defendant's background and the specific circumstances of this crime and determined that a sentence above the guidelines range was appropriate in this case.

The trial court considered and articulated relevant factors in imposing sentence and it clearly determined that the specific length of the sentence imposed was necessary to ensure that defendant was never released back into society to re-offend. The sentence comports with the principle of proportionality.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra